1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   FRANCHESKA BRITT, *on behalf of the*          No.  1:23-cv-01475-KES-BAM
     *State of California as a private attorney*
12   *general,*

13                 Plaintiff,                       ORDER GRANTING DEFENDANTS'
                                                    MOTION TO COMPEL PLAINTIFF'S
14        v.                                        INDIVIDUAL PAGA CLAIM TO
                                                    ARBITRATION, DENYING MOTION TO
15   LENNAR CORPORATION et al.,                     DISMISS, AND STAYING CASE AS TO
                                                    REMAINING CLAIMS
16                 Defendants.
                                                    (Doc. Nos. 6, 28)
17

18

19

20          This matter is before the court on (1) the motion to dismiss, or in the alternative, to stay,

21   and (2) the motion to compel arbitration and dismiss, or in the alternative, to stay filed by Lennar

22   Corporation and Lennar Sales Corporation (collectively "defendants") on November 8, 2023, and

23   March 29, 2024, respectively.  (Doc. Nos. 6, 28.)  The court took both motions under submission

24   on the papers pursuant to Local Rule 230(g).  (Doc. Nos. 16, 33.)  For the reasons explained

25   below, the court will grant defendants' motion to compel arbitration of plaintiff's individual

26   PAGA claim and stay proceedings on plaintiff's non-individual PAGA claims pending

27   completion of arbitration.  In light of that order, the court will also deny defendants' motion to

28   dismiss (Doc. No. 6) as having been rendered moot by this order.

                                                 1

**BACKGROUND**

**A.    Factual Background**

Plaintiff's complaint filed October 16, 2023, seeks to recover civil penalties for herself and other aggrieved employees under the California Private Attorneys General Act ("PAGA"). (Doc. No. 1.)  Therein, plaintiff alleges the following.  Defendants operate one of the largest home construction businesses in the nation, serving homebuyers in twenty-six states, including California.  (*Id.* at ¶ 23.)  Defendants employed plaintiff and other aggrieved employees during all relevant times and acted as joint employers.[1]  (*Id.* at ¶¶ 24, 25, 55–58.)  As defendants' employees, plaintiff and other aggrieved individuals were responsible for:

> driving from their home office to Defendants' places of business; sanitizing and cleaning; opening and closing model homes and offices; preparing the model homes and offices for visitors; making and receiving work-related calls; sending and receiving work-related emails and text messages; meeting with prospective and existing customers at Defendants' places of business; utilizing various computer programs and software for performing their job duties; and preparing and completing paperwork, among many other duties.

(*Id.* at ¶ 27.)  Plaintiff alleges that defendants did not properly compensate plaintiff and other aggrieved employees for the hours they worked at the legally required rates, failed to provide meal and rest periods, failed to furnish accurate wage statements and expense reimbursements, and failed to pay waiting time wages upon termination.  (*Id.* at ¶¶ 59–129.)

More specifically, plaintiff has brought a single cause of action under PAGA, "individually on behalf of herself and as representative of the State of California and other aggrieved employees," seeking to recover civil penalties based on the following violations:  (1) failure to pay wages and overtime for all hours worked pursuant to California Labor Code §§ 204, 510, 558, 1182.12, 1194, 1194.2, 1197, 1198, and the Wage Order; (2) failure to pay minimum wages pursuant to California Labor Code § 1197; (3) failure to provide required meal breaks pursuant to California Labor Code §§ 226.7, 512; (4) failure to allow rest breaks pursuant to California Labor Code §§ 226.7, 512; (5) failure to provide accurate itemized wage statements

---

[1]  Plaintiff was employed by defendants from approximately October 2017 to February 2023. (Doc. No. 28-2 at 4.)

under California Labor Code § 226; (6) waiting time penalties under California Labor Code §§ 201, 202, 203; (7) failure to pay all wages due twice monthly pursuant to California Labor Code § 204; and (8) failure to reimburse necessary expenditures or losses under California Labor Code § 2802.  (*Id.* at ¶¶ 1, 6, 59–129.)

On October 5, 2017, defendants presented plaintiff with an employment offer for an onsite sales coordinator position stationed in Fresno, California.  (Doc. No. 28-5 at 2.)  That offer letter referenced defendants' dispute resolution-mediation and arbitration policy ("DRP") and expressly provided that "any and all disputes that arise relating to your employment with the Company and/or any of its affiliates . . . will be arbitrated in accordance with the Company's [DRP.]"  (*Id.* at 3.)  Plaintiff signed her offer letter on October 6, 2017.  (*Id.* at 5.)  As part of her employment, plaintiff executed three subsequent acknowledgements of the DRP on October 23, 2017, May 9, 2021, and June 29, 2022.  (Doc. No. 28-6 at 7–24.)

By its express terms, the DRP "applies to all disputes arising from or related to an Associate's employment with the Company[.]"  (*Id.* at 2.)  It further provides that disputes will be resolved "exclusively by binding arbitration under the Federal Arbitration Act ('FAA') and this policy."  (*Id.* at 3.)  Concerning the forum in which to arbitrate, the DRP states:

> Arbitrations under this policy will be . . . resolved by a neutral arbitrator in a binding arbitration administered by the American Arbitration Association ('AAA') under the arbitration-related portion of the AAA's Employment Arbitration Rules and Mediation Procedures (the 'Arbitration Rules'), in effect on November 1, 2009, including indigency determination procedures.

(*Id.*)  The DRP requires claims to be arbitrated on an individual basis, providing that "Associate and the Company agree to arbitrate any claims individually and further agree there shall be no class actions, collective actions, multi-plaintiff arbitrations, or class arbitrations of any claims within the scope of this Arbitration Policy."  (*Id.* at 4.)  The DRP also contains a reformation clause, which states that in the event of a conflict with applicable law "the law shall govern, and [the conflicting] part of this arbitration procedure shall be reformed and construed to the maximum extent possible in conformance with the applicable law.  The arbitration procedure shall remain otherwise unaffected and enforceable."  (*Id.* at 5.)

On July 10, 2023, "[a]s required by [California] Labor Code § 2699.3(a)(1), Plaintiff provided written notice by electronic filing to the Labor & Workforce Development Agency ('LWDA') and to Defendants by certified mail of the legal claims and theories of this case[.]" (Doc. No. 1 at ¶ 63.)  On August 4, 2023, plaintiff initiated individual arbitration proceedings with the AAA, asserting claims for the alleged California Labor Code violations underlying this action, along with additional claims not presently before the court.  (Doc. No. 28-2 at 2–32.)  As of the date of this order, that arbitration proceeding appears to be ongoing.  (*See* Doc. No. 31 at 27.)

**B.    Procedural Background**

As noted, plaintiff filed the complaint initiating this action on October 16, 2023.  (Doc. No. 1.)  Defendants were each served with a summons on October 18, 2023.  (Doc. Nos. 4, 5.)  On November 8, 2023, defendants filed a motion to dismiss contending, in part, that plaintiff's claim falls within the scope of an arbitration agreement and must be arbitrated on an individual basis.  (Doc. No. 6.)  Plaintiff filed her opposition to defendants' motion on November 22, 2023; defendants filed their reply thereto on November 30, 2023.  (Doc. Nos. 9, 13.)

On March 12, 2024, at the parties' request, the assigned magistrate judge held an informal discovery dispute conference to resolve plaintiff's request to compel defendants' response to an interrogatory seeking the contact information for each non-exempt employee who worked for defendants in California during the time period July 10, 2022, through the present, as well as the total number of such employees.  (Doc. Nos. 19, 23.)  Following supplemental briefing on the matter, the magistrate judge issued an order on April 8, 2024, denying plaintiff's request to compel discovery, and granting defendants' request for a temporary stay of non-individual PAGA discovery pending resolution of defendants' motion to dismiss.  (Doc. No. 30.)

On March 29, 2024, defendants filed the pending motion to compel arbitration.  (Doc. No. 28.)  Plaintiff filed her opposition to the pending motion on April 12, 2024, and defendants filed their reply thereto on April 22, 2024.  (Doc. Nos. 31, 32.)

///

///

1

**LEGAL STANDARD**

2     The Federal Arbitration Act ("FAA") governs arbitration agreements.  9 U.S.C. § 2.

3  "Section 2 of the statute makes arbitration agreements 'valid, irrevocable, and enforceable, save

4  upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Viking River*

5  *Cruises, Inc. v. Moriana*, 596 U.S. 639, 649–50 (2022) (quoting 9 U.S.C. § 2).  "As [the Supreme

6  Court has] interpreted it, this provision contains two clauses:  An enforcement mandate, which

7  renders agreements to arbitrate enforceable as a matter of federal law, and a saving clause, which

8  permits invalidation of arbitration clauses on grounds applicable to 'any contract.'"  *Id.* at 650

9  (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339–40 (2011)).

10    An aggrieved party seeking to enforce a written arbitration agreement may petition the

11 court for "an order directing the parties to proceed to arbitration in accordance with the terms of

12 the agreement." 9 U.S.C. § 4.  In ruling on a motion to compel arbitration, a court's role is

13 "limited to determining: (1) whether a valid agreement to arbitrate exists and, if it does, (2)

14 whether the agreement encompasses the dispute at issue." *Boardman v. Pac. Seafood Grp.*, 822

15 F.3d 1011, 1017 (9th Cir. 2016).  The party seeking to compel arbitration bears the burden of

16 proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Knutson*

17 *v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).  "Arbitration is a matter of contract,

18 and the FAA requires courts to honor parties' expectations." *Concepcion*, 563 U.S. at 351.

19 However, parties may rely upon general contract defenses to invalidate an agreement to arbitrate.

20 *See id*. at 339.  "In determining whether the parties have agreed to arbitrate a particular dispute,

21 federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin.*

22 *Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citing *First Options of Chi., Inc. v. Kaplan*, 514

23 U.S. 938, 944 (1995)).

24    "To require arbitration, [a plaintiff's] factual allegations need only 'touch matters'

25 covered by the contract containing the arbitration clause and all doubts are to be resolved in favor

26 of arbitrability." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (citing *Mitsubishi*

27 *Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985)).  If a valid

28 arbitration agreement encompassing the dispute exists, arbitration is mandatory. *Dean Witter*

*Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  Under section 3 of the FAA, a court, "upon being satisfied that the issue involved . . . is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.

## ANALYSIS

### A.      Relevant Background Principles of PAGA Actions

The California Legislature enacted PAGA "in response to widespread violations of the Labor Code and significant underenforcement of those laws."  *Adolph v. Uber Techs., Inc.*, 14 Cal. 5th 1104, 1116 (2023) (citing *Arias v. Superior Ct.*, 46 Cal. 4th 969, 980 (2009)).  Under PAGA, "an 'aggrieved employee' may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations."  *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 380 (2014) (quoting Cal. Lab. Code § 2699(a)).  An aggrieved employee is "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed."  Cal. Lab. Code § 2699(c).  Of the civil penalties recovered in a PAGA action, "75 percent goes to the Labor and Workforce Development Agency, leaving the remaining 25 percent for the 'aggrieved employees.'"  *Iskanian*, 59 Cal. 4th at 380 (quoting Cal. Lab. Code § 2699(i)).

In *Viking River*, the Supreme Court explained that PAGA actions are "representative" in two ways.  *Viking River*, 596 U.S. at 648–49.  In the first way, PAGA actions are representative in that the employee suing to recover civil penalties does so "as the proxy or agent of the state."  *Id.* at 645 (internal quotation marks and citation omitted).  "In other words, the statute gives employees a right to assert the State's claims for civil penalties on a representative basis, but it does not create any private rights or private claims for relief."  *Id.* at 646 (citing *Iskanian*, 59 Cal. 4th at 381).  "Other, distinct provisions of the code create individual rights, and claims arising from violations of those rights are actionable through separate private causes of action for compensatory or statutory damages."  *Id.* (citing *Iskanian*, 59 Cal. 4th at 381–82).  The Supreme Court explained that in this first sense where the employee acts as an agent of the state, "every PAGA action is representative and there is no individual component[.]"  *Id.* at 648 (internal

quotation marks and citation omitted).

In the second way, "PAGA claims are also called 'representative' when they are predicated on code violations sustained by other employees." *Id.* at 648.  "But when the word 'representative' is used in the second way, it makes sense to distinguish 'individual' PAGA claims, which are premised on Labor Code violations actually sustained by the plaintiff, from 'representative' (or perhaps quasi-representative) PAGA claims arising out of events involving other employees." *Id.* at 648–49; *see also Adolph*, 14 Cal. 5th at 1114, 1117–18 (clarifying that *Viking River* labeled PAGA claims brought on behalf of other employees as non-individual claims).

With this framework in mind and for the sake of clarification, the court notes that plaintiff in this case "seek[s] only to recover PAGA civil penalties and does not seek the underlying general and/or special damages for any violations alleged.  Rather, Plaintiff is pursuing her individual claims for the underlying Labor Code violations in arbitration." (Doc. No. 31 at 8.) Accordingly, plaintiff has brought a PAGA action comprised of individual and non-individual claims in her representative capacity—i.e., as an agent of the state.  Below, the court will address the individual, and non-individual components of plaintiff's representative PAGA action separately.

**B.      Individual PAGA Claim**

Defendants moved to compel plaintiff's individual PAGA claim to arbitration, or in the alternative, stay proceedings pending completion of plaintiff's individual arbitration.  (Doc. No. 28 at 9–10.)  Plaintiff opposes the motion on two grounds: first, that defendants have waived their right to compel arbitration, and second, that the DRP is invalid and unenforceable under California law.  (Doc. No. 31 at 11–17.)  The court will examine each of plaintiff's arguments in this regard below.

1.      Waiver

Plaintiff argues that defendants have waived their right to compel arbitration of her individual PAGA claim "by actively participating in litigation of this matter in court for nearly six months and filing a motion to dismiss in which Defendants sought a judicial ruling on the merits

of Plaintiff's claims[.]" (Doc. No. 31 at 12.) Plaintiff also notes that prior to filing their motion to compel arbitration, defendants "moved to stay the case; participated in a Rule 26(f) conference and drafted a joint scheduling report; engaged in written discovery; agreed to work with Plaintiff's counsel on a draft of a *Belaire-West* notice; participated in a hearing; and submitted letter briefs[.]"[2] (*Id.* at 15.) In response, defendants indicate that the basis for their motion to dismiss, which was filed less than one month after the complaint was filed, was that plaintiff's claims were subject to arbitration. (Doc. No. 32 at 6.) Defendants further note that they have successfully objected to participating in discovery and so their litigation conduct in this matter, if any, does not amount to a waiver of the right to compel arbitration. (*Id.* at 7.) The court finds defendants' arguments in this respect to be persuasive.

Following the Supreme Court's decision in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), the Ninth Circuit has clarified that the question of waiver in the arbitration context now turns on whether the party opposing arbitration and asserting waiver establishes the other party's "(1) knowledge of an existing right to compel arbitration and (2) intentional acts inconsistent with that existing right." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023). The Ninth Circuit also acknowledged that "the body of caselaw in this Circuit applying these two elements remains good law following *Morgan*[.]" *Id.* at 460.

Here, the first element is not in dispute considering that defendants drafted the DRP and provided it to plaintiff. In their reply, defendants rest their argument solely on the second element of waiver, implicitly conceding that they had knowledge of an existing right to compel plaintiff's claims to arbitration. (Doc. No. 32 at 6–8.)

As to the second element, "[t]here is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate." *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). Instead, the totality of the parties' actions should be considered. *Hill*, 59 F.4th at 471. "[A] party generally "acts inconsistently with exercising the right to arbitrate when

---

[2] A *Belaire-West* notice is a written notice to putative class members informing them of the lawsuit and giving them an opportunity to opt out. *Belaire-West Landscape, Inc. v. Superior Court*, 149 Cal. App. 4th 554, 557–58 (2007).

1    it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the

2    merits of a case for a prolonged period of time in order to take advantage of being in court."

3    *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023) (citing *Newirth ex rel.*

4    *Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 941 (9th Cir. 2019), *abrogated on other*

5    *grounds by Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022)).

6         The Ninth Circuit's decision in *Hill* is instructive as an example of when a party has acted

7    inconsistently with its right to arbitrate.  In that case, the defendant who sought to enforce an

8    arbitration agreement against certain class member signatories "request[ed] extensive

9    discovery"—including multiple interrogatories and requests for production—on unnamed parties

10   to assist in resolution of the underlying merits of the dispute.  *Hill*, 59 F.4th at 474–76.  The

11   defendant went on to challenge the merits of the action at the district court, the Ninth Circuit, and

12   the Washington Supreme Court without reserving its right to compel arbitration.  *Id.* at 473.

13   Critically, the defendant filed a motion for partial summary judgment which "led the district court

14   to certify an interlocutory appeal which [was litigated] for nearly five years." *Id.* at 476.  The

15   Ninth Circuit determined that these actions presented "a clear narrative of [the defendant's]

16   strategic choice to engage the judiciary for resolution of the class claims rather than to obtain a

17   resolution from an arbitrator[,]" and affirmed the district court's finding that the defendant had

18   waived its right to compel arbitration.  *Id.* at 477.

19        In this case, the court readily finds that defendants' litigation conduct has not been

20   inconsistent with their pending assertion of the right to compel arbitration of plaintiff's individual

21   PAGA claim.  For example, defendants moved to dismiss on the basis of arbitrability in their first

22   responsive pleading, which was filed just twenty-three days after the filing of the complaint.

23   (Doc. No. 6.)  Although not styled as a motion to compel arbitration, the substance of that motion

24   was clearly consistent with defendants' assertion of their right to compel arbitration.  (*See*

25   *generally*, Doc. No. 6.)

26        Plaintiff relies on *Martin v. Yasuda*, 829 F.3d 1118 (9th Cir. 2016), and other California

27   district court cases applying that decision, to argue that defendants' filing of the motion to dismiss

28   is an act inconsistent with its right to arbitrate.  (Doc. No. 31 at 14.)  While the Ninth Circuit in

1    *Martin* did find that filing a motion to dismiss on a key merits issue amounted to conduct

2    inconsistent with the right to arbitrate, *Martin v. Yasuda*, 829 F.3d 1118, 1126 & n.4 (9th Cir.

3    2016), the motion at issue here is distinguishable because it was made based on arbitrability.  The

4    "key merits issue" of the motion to dismiss in *Martin* was "whether the Cosmetology Act legally

5    precluded [] students from being classified as employees."  *Id.* at n.4.  In contrast, defendants'

6    motion to dismiss filed in this case does not seek judicial resolution on the key merits issue of

7    whether plaintiff was an aggrieved employee under PAGA, rather, it asks for that issue to be

8    resolved in individual arbitration pursuant to the DRP.[3]  (Doc. No. 6 at 9–14.)

9            Moreover, the totality of the litigation conduct in *Martin* is also distinguishable from the

10   present case.  There, the party seeking to arbitrate "did not even note their right to arbitration until

11   almost a year into the litigation and did not move to enforce that right until well after that time."

12   *Martin*, 829 F.3d at 1126.  Further, that party devoted "considerable time and effort" to a joint

13   stipulation structuring the litigation, entered into a protective order, answered discovery, and

14   conducted a deposition.  *Id.*  Conversely, defendants in this case have successfully objected to

15   participating in discovery after receiving a single interrogatory and initially agreeing to work on a

16   draft *Belaire-West* notice, but later contending that the requested information was premature

17   given their intention to move to compel individual arbitration.  (Doc. No. 30 at 2.)  Defendants

18   have not filed an answer to the complaint, nor have they conducted any depositions or entered

19   into a protective order.  Roughly six months after the complaint was filed, defendants moved to

20   compel arbitration, reiterating many of the arguments already made in their motion to dismiss.

21   (*See* Doc. Nos. 6, 28.)  These circumstances illustrate defendants' reluctance to proceed in this

22   forum and lead to the conclusion that they have not actively litigated this matter in order to take

23   advantage of being in court.

24           Finally, due to the totality of defendants' conduct described above, the court does not find

25   _____

26   [3]  To the extent that defendants' arguments on whether plaintiff has standing to bring a
     representative PAGA action implicate a key merits issue, the court notes that it is improper to

27   review each of defendants' acts in isolation under this prong of the waiver analysis.  *See Hill*, 59
     F.4th at 471 n.16 (emphasizing the need to apply a holistic, rather than individualized approach to

28   determine the inconsistent acts element of waiver).

1    that defendants' six-month delay before filing the motion to compel arbitration amounts to

2    "extended silence delay" indicating a course of action inconsistent with the right to arbitrate.

3    *Martin*, 829 F.3d at 1125; *see also Armstrong*, 59 F.4th at 1016 (finding no waiver where the

4    motion to compel arbitration was made within one year after the complaint was filed).

5           For these reasons, the court concludes that defendants have not engaged in intentional acts

6    inconsistent with their right to compel arbitration, and accordingly have not waived that right.

7    The court will next address whether the DRP is valid, and if so, whether this dispute is covered by

8    that agreement.

9           2.      Validity and Enforceability of the DRP

10          In opposing defendants' pending motion to compel arbitration, plaintiff briefly argues the

11   DRP's requirement to arbitrate individually constitutes a "wholesale waiver of PAGA claims" in

12   violation of the California Supreme Court's holding in *Iskanian v. CLS Transportation Los*

13   *Angeles, LLC*, 59 Cal. 4th 348 (2014), *abrogated on other grounds by Viking River Cruises, Inc.*

14   *v. Moriana*, 596 U.S. 639 (2022), which rendered employment agreements containing predispute

15   categorical waivers of the right to bring representative PAGA claims contrary to public policy

16   and unenforceable as a matter of state law.  (Doc. No. 31 at 11–12.)  In response, defendants

17   argue that plaintiff's interpretation of the DRP is incorrect, and that the individual arbitration

18   requirement does not run afoul of California law.  (Doc. No. 32 at 3.)  The court finds plaintiff's

19   argument unconvincing because it is based on a misinterpretation of the DRP, and in any event,

20   the DRP's reformation clause would entitle defendants to enforce the agreement to the extent it

21   mandates arbitration of plaintiff's individual PAGA claim.

22          In *Viking River*, the Supreme Court considered whether the FAA "preempts a rule of

23   California law that invalidates contractual waivers of the right to assert representative claims

24   under" PAGA.  *Viking River*, 596 U.S. at 643.  In that case, the employee "executed an agreement

25   to arbitrate any dispute arising out of her employment."  *Id.* at 647.  "The agreement contained a

26   'Class Action Waiver' providing that in any arbitral proceeding, the parties could not bring any

27   dispute as a class, collective, or representative PAGA action."  *Id.*  Additionally, that agreement

28   "contained a severability clause specifying that if the waiver was found invalid, any class,

11

1  collective, representative, or PAGA action would presumptively be litigated in court.  But under

2  that severability clause, if any 'portion' of the waiver remained valid, it would be 'enforced in

3  arbitration.'"  *Id.*

4     In light of the *Iskanian* rule prohibiting wholesale waiver of PAGA claims, the Supreme

5  Court in *Viking River* interpreted the severability clause to reflect the parties' agreement to

6  arbitrate disputes personally sustained by the employee—i.e., the individual claims, and held that

7  the FAA preempted a separate *Iskanian* rule "insofar as it precludes division of PAGA actions

8  into individual and non-individual claims through an agreement to arbitrate."  *Id.* at 657–62, 662.

9  Based on the severability clause, the Supreme Court concluded that the employer "was entitled to

10 enforce the agreement insofar as it mandated arbitration of [the employee's] individual PAGA

11 claim."  *Id.* at 662.  The Supreme Court then dismissed the employee's non-individual PAGA

12 claims for lack of statutory standing.[4]  *Id.* at 663 ("When an employee's own dispute is pared

13 away from a PAGA action, the employee is no different from a member of the general public, and

14 PAGA does not allow such persons to maintain suit.").

15    Here, the DRP "applies to all disputes arising from or related to an Associate's

16 employment with the Company[.]"  (Doc. No. 28-6 at 2.)  It states:

> 17 Associate and the Company agree to arbitrate any claims individually
> and further agree there shall be no class actions, collective actions,
> 18 multi-plaintiff arbitrations, or class arbitrations of any claims within
> the scope of this Arbitration Policy.  The arbitrator shall not have
> 19 power to treat any claim as a class, collective, multi-plaintiff, or
> consolidated claim.  This means that arbitration may only proceed on
> 20 an individual basis.

21 (Doc. No. 28-6 at 4.)

22    This provision embodies an agreement to arbitrate claims individually.  It seeks to limit

23 the arbitration of non-individual PAGA claims—i.e., those "predicated on code violations

24 sustained by other employees."  *Viking River*, 596 U.S. at 648.  The DRP's individual arbitration

25 requirement is not a "wholesale waiver" as plaintiff suggests, because it does not prevent her

26 _____

27 [4]  Following the decision in *Viking River*, the California Supreme Court revisited the issue of
PAGA standing in *Adolph v. Uber Techs., Inc.*, 14 Cal. 5th 1104 (2023).  The effect of that
decision will be discussed below, where more relevant, as to plaintiff's non-individual PAGA
28 claims.

1  from seeking to recover civil penalties in court on behalf of the State, if she has standing based on

2  her individual PAGA claims.  Accordingly, the DRP is not invalid in this respect.  *See Shams v.*

3  *Revature LLC*, 621 F. Supp. 3d 1054, 1057 (N.D. Cal. 2022) ("Because the waiver only waives

4  Shams' right to bring non-individual PAGA claims, it is permissible under *Viking River*

5  *Cruises*."); *Filemon Colores v. Ray Moles Farms, Inc.*, No. 1:21-cv-00467-JLT-BAM, 2023 WL

6  2752379, at *6 (E.D. Cal. Mar. 31, 2023) ("Because the Agreement does not prohibit Colores

7  from bringing agent/proxy claims on behalf of the State, it is not an impermissible 'wholesale'

8  PAGA waiver[.]"); *Dhaliwal v. Ace Hardware Corp.*, No. 2:22-cv-00446-DAD-KJN, 2023 WL

9  2555471, at *8 (E.D. Cal. Mar. 17, 2023) (collecting cases with similar rationale).

10      Even if the DRP were construed as a wholesale waiver of PAGA claims, it contains a

11  reformation clause analogous to the severability clause in *Viking River*.  The clause in *Viking*

12  *River* "provide[d] that if the waiver provision is invalid in some respect, any 'portion' of the

13  waiver that remains valid must still be 'enforced in arbitration.'"  *Viking River*, 596 U.S. at 662.

14  Based on this language, the Supreme Court reasoned that the employer was entitled to enforce its

15  employment agreement insofar as it mandated arbitration of the employee's individual PAGA

16  claim.  *Id.*

17      Here, the DRP's reformation clause states:

18          If any part of this arbitration procedure is in conflict with any
           applicable law, the law shall govern, and that part of this arbitration
19          procedure shall be reformed and construed to the maximum extent
           possible in conformance with the applicable law. The arbitration
20          procedure shall remain otherwise unaffected and enforceable.

21  (Doc. No. 28-6 at 5.)  This reformation clause is sufficiently analogous to the severability clause

22  in *Viking River* as to warrant the same result.  Therefore, to the extent that the DRP is construed

23  as a wholesale waiver of PAGA claims in violation of California law, the court finds that

24  defendants may still enforce the agreement insofar as it requires arbitration of plaintiff's

25  individual PAGA claim.

26      3.  Applicability of the DRP to the Present Dispute

27      Plaintiff does not dispute that her individual PAGA claim falls within the scope of the

28  DRP.  (*See* Doc. No. 31.)  Indeed, the DRP's broad language plainly indicates that plaintiff's

1   claim is covered by that agreement.

2        "In determining if a dispute falls within the scope of an arbitration clause, we examine the

3   factual allegations raised in the complaint." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1101

4   (9th Cir. 2023) (citing *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999)). "To

5   require arbitration, [the plaintiff's] factual allegations need only 'touch matters' covered by the

6   contract containing the arbitration clause and all doubts are to be resolved in favor of

7   arbitrability." *Simula, Inc.*, 175 F.3d at 719 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-*

8   *Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985)).

9        In this case, the DRP "applies to all disputes arising from or related to an Associate's

10   employment with the Company[.]" (Doc. No. 28-6 at 2.) Plaintiff's complaint brings a claim

11   under PAGA relating to her employment and is based on defendants' alleged violations of the

12   California Labor Code. (Doc. No. 1.) Thus, plaintiff's individual PAGA claim is encompassed

13   by the DRP.

14        In conclusion, having found the DRP to be valid and enforceable, and because plaintiff's

15   claim is encompassed by that agreement, the court grants defendants' motion to compel plaintiff's

16   individual PAGA claim to arbitration. The court will next turn to address plaintiff's non-

17   individual PAGA claims.

18   **C.      Non-Individual PAGA Claims**

19        In their motion and reply, defendants argue that plaintiff's non-individual claims must be

20   dismissed in accordance with the Supreme Court's decision in *Viking River*, 596 U.S. 639 (2022).

21   (Doc. Nos. 28 at 12–21; 32 at 4.) As an alternative to dismissal, defendants request a stay of

22   proceedings, and that any accrual of penalties be paused pending the completion of arbitration.

23   (Doc. Nos. 28 at 21–23; 32 at 5–6, 8–9.)

24        In opposing defendants' motion, plaintiff asserts that her non-individual PAGA claims

25   should not be dismissed given the California Supreme Court's decision in *Adolph v. Uber Techs.,*

26   *Inc.*, 14 Cal. 5th 1104 (2023). (Doc. No. 31 at 11.) Plaintiff also argues that defendants' motion

27   to compel arbitration and dismiss runs afoul of the Federal Rules of Civil Procedure ("FRCP")

28   insofar as it presents a second motion to dismiss. (*Id.* at 17–18.) Finally, plaintiff

1    opposes a stay on her non-individual claims and further requests that any accrual of PAGA

2    penalties not be paused in the event of a stay.  (*Id.* at 24–28.)

3         Below, the court will address (1) plaintiff's procedural argument, (2) whether to dismiss,

4    stay, or proceed with litigation on her non-individual PAGA claims, and (3) whether to pause the

5    accrual of any PAGA penalties in the event a stay is issued.

6         1.   Late-filed Motions to Dismiss Under FRCP 12(g)(2)

7         Plaintiff argues that defendants' second motion to dismiss (Doc. No. 28) should be

8    stricken given their earlier filed motion (Doc. No. 6), in which they had moved to dismiss under

9    FRCP 12(b)(6).  (Doc. No. 31 at 17–18.)  Defendants do not address this argument in their reply.

10   However, for the reasons explained below, the court finds plaintiff's argument unpersuasive.

11        FRCP 12(g)(2) states that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes

12   a motion under this rule must not make another motion under this rule raising a defense or

13   objection that was available to the party but *omitted* from its earlier motion."  Fed. R. Civ. P. 12

14   (emphasis added).  "The consequence of omitting a defense from an earlier motion under Rule 12

15   depends on type of defense omitted.  A defendant who omits a defense under Rules 12(b)(2)–

16   (5)—lack of personal jurisdiction, improper venue, insufficient process, and insufficient service

17   of process—entirely waives that defense."  *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317

18   (9th Cir. 2017) (citing Fed. R. Civ. P. 12(h)(1)(A)).  "A defendant who omits a defense under

19   Rule 12(b)(6)—failure to state a claim upon which relief can be granted—does not waive that

20   defense."  *Id.* at 317–18.  "Rule 12(g)(2) provides that a defendant who *fails* to assert a failure-to-

21   state-a-claim defense in a pre-answer Rule 12 motion cannot assert that defense in a later pre-

22   answer motion under Rule 12(b)(6)[.]"  *Id.* at 318 (emphasis added).

23        Here, a plain reading of FRCP(g)(2) reveals that plaintiff's argument is foreclosed.  In

24   their original motion to dismiss, defendants argued that plaintiff's individual PAGA claim is

25   subject to arbitration, and so the remainder of her PAGA action—the non-individual claims—

26   must be dismissed for lack of standing pursuant to *Viking River*.  (Doc. No. 6 at 10–13.)

27   Defendants raise this exact argument in their motion to compel arbitration and dismiss.  (Doc. No.

28   28 at 19–21.)  Therefore, defendants have not raised a defense or objection that was available but

1   *previously omitted* from its earlier motion.

2         Accordingly, the court denies plaintiff's request to strike.

3         2.     <u>Whether to Dismiss, Stay, or Proceed with Litigation on Non-individual Claims</u>

4         As to plaintiff's non-individual claims, defendants rely on *Viking River* to argue that

5   dismissal is required because plaintiff lacks standing to bring a PAGA action in court once her

6   individual claim has been sent to arbitration.  (Doc. No. 6 at 10–13.)  Plaintiff argues that the

7   California Supreme Court clarified *Viking River*'s interpretation of PAGA standing in *Adolph*,

8   and that she is allowed to maintain her non-individual claims in court as a result.  (Doc. No. 31 at

9   20–21.)  The court finds plaintiff's argument persuasive in this respect.

10        As noted above, the Supreme Court in *Viking River* found that the employee's individual

11  PAGA claim in that action could be compelled to arbitration and held that the FAA preempted the

12  California Supreme Court's rule in *Iskanian* "insofar as it precludes division of PAGA actions

13  into individual and non-individual claims through an agreement to arbitrate."  *Viking River*, 596

14  U.S. at 662.  In addressing the remaining question of what the lower courts should have done with

15  the employee's non-individual claims, the Supreme Court reasoned that PAGA "provides no

16  mechanism to enable a court to adjudicate non-individual PAGA claims once an individual claim

17  has been committed to a separate proceeding.  Under PAGA's standing requirement, a plaintiff

18  can maintain non-individual PAGA claims in an action only by virtue of also maintaining an

19  individual claim in that action."  *Viking River*, 596 U.S. at 663.  Thus, the Supreme Court found

20  that the correct course was to dismiss the employee's non-individual claims for lack of statutory

21  standing.  *Id.*  However, Justice Sotomayor's concurrence in *Viking River* explained that "if this

22  Court's understanding of state law is wrong, California courts, in an appropriate case, will have

23  the last word."  *Viking River*, 596 U.S. at 664 (Sotomayor, J., concurring).

24        After the decision in *Viking River*, the California Supreme Court revisited the issue of

25  PAGA standing in *Adolph v. Uber Techs., Inc.*, 14 Cal. 5th 1104 (2023).  Specifically, the

26  question in that case was "whether an aggrieved employee who has been compelled to arbitrate

27  claims under PAGA that are premised on Labor Code violations actually sustained by the plaintiff

28  maintains statutory standing to pursue PAGA claims arising out of events involving other

employees in court." *Id.* at 1114 (internal quotation marks and citations omitted). The California Supreme Court answered that question in the affirmative, holding that "[w]here a plaintiff has brought a PAGA action comprising individual and non-individual claims, an order compelling arbitration of the individual claims does not strip the plaintiff of standing as an aggrieved employee to litigate claims on behalf of other employees under PAGA." *Id.* "Only if there has been a final determination that the plaintiff's arbitrated individual PAGA claim is without merit does the plaintiff lose statutory standing under PAGA to pursue his or her non-individual PAGA claims in court." *Johnson v. Lowe's Home Centers, LLC*, 93 F.4th 459, 464 (9th Cir. 2024) (discussing *Adolph*).

In this case, the *Adolph* decision squarely rejects defendants' argument as to dismissal. The Ninth Circuit has also weighed in on the issue, noting in *Johnson* that "the California Supreme Court in *Adolph* corrected *Viking River*'s misinterpretation of PAGA[.]" *Id.* (vacating district court's order dismissing non-individual PAGA claims under *Viking River* and remanding to apply *Adolph*). Accordingly, the court finds that plaintiff retains standing to pursue her non-individual claims in this action and denies defendants' motion to dismiss.

The parties also disagree as to whether a stay is discretionary or mandatory. Defendants request a mandatory stay under 9 U.S.C. § 3. (Doc. Nos. 28 at 21–23; 32 at 3–6.) Plaintiff argues a stay is discretionary under Ninth Circuit precedent, and requests that litigation move forward. (Doc. No. 31 at 23–27.) For the reasons set forth below, the court finds that a stay of plaintiff's non-individual PAGA claims is the appropriate disposition.

Section 3 of the FAA provides that a district court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3 (emphasis added). In interpreting this provision, the Ninth Circuit has explained that "where some, but not all, parties' claims are subject to arbitration, courts have discretion to stay or proceed with litigation on non-arbitrable claims." *Forrest v. Spizzirri*, 62 F.4th 1201, 1204 n.2 (9th Cir. 2023), *cert. granted sub nom. Smith v. Spizzirri*, 144 S. Ct. 680 (2024) (review sought on different issue). Here, because plaintiff's non-individual PAGA claims remain in this court in accordance with *Adolph*, not all her claims are subject to

17

arbitration.  Therefore, the court is unpersuaded by defendants' argument and considers the

issuance of a stay to be within its discretion.  The court will next determine whether to exercise

that discretion and issue a stay in this matter.

"[T]he power to stay proceedings is incidental to the power inherent in every court to

control the disposition of the causes on its docket with economy of time and effort for itself, for

counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  The Ninth Circuit

has set forth the following framework with respect to discretionary stays:

> Where it is proposed that a pending proceeding be stayed, the
> competing interests which will be affected by the granting or refusal
> to grant a stay must be weighed.  Among those competing interests
> are the possible damage which may result from the granting of a stay,
> the hardship or inequity which a party may suffer in being required
> to go forward, and the orderly course of justice measured in terms of
> the simplifying or complicating of issues, proof, and questions of law
> which could be expected to result from a stay.

*Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300

F.2d 265, 268 (9th Cir. 1962)).

First, with respect to the damage which may result from granting a stay, plaintiff argues

she will suffer irreparable harm because (1) a stay allows defendants to continue to violate the

Labor Code, and (2) a stay threatens her ability to investigate the merits of her claims, specifically

as to aggrieved employees.  (Doc. No. 31 at 25–26.)  Setting aside the issue that defendants'

continued violations of the Labor Code are merely speculative, any harm resulting from

continued violations could be adequately redressed—whether in individual arbitration, or

subsequently in this court.  Turning to plaintiff's ability to investigate the merits, while it is true

that some witnesses' memories may fade, defendants note that aggrieved employees' contact

information would not be lost as the matter is already under a litigation hold.  (Doc. No. 32 at 6

n.1.)  Given these circumstances, any damage that would result from granting a stay is minimal.

Second, as to the hardship defendants may suffer in moving forward and as to judicial

economy, the court finds persuasive the proposed course of action that the California Supreme

Court described in *Adolph*:

> [T]he trial court may exercise its discretion to stay the non-individual

18

claims pending the outcome of the arbitration pursuant to section 1281.4 of the Code of Civil Procedure.  Following the arbitrator's decision, any party may petition the court to confirm or vacate the arbitration award under section 1285 of the Code of Civil Procedure. If the arbitrator determines that Adolph is an aggrieved employee in the process of adjudicating his individual PAGA claim, that determination, if confirmed and reduced to a final judgment (Code Civ. Proc., § 1287.4), would be binding on the court, and Adolph would continue to have standing to litigate his nonindividual claims. If the arbitrator determines that Adolph is not an aggrieved employee and the court confirms that determination and reduces it to a final judgment, the court would give effect to that finding, and Adolph could no longer prosecute his non-individual claims due to lack of standing.

*Adolph*, 14 Cal. 5th at 1123–24.  Other district courts in California have adopted the procedure suggested in *Adolph* and stayed proceedings on non-individual PAGA claims pending the outcome of arbitration.  *See Bracamontes v. United Rentals, Inc.*, No. 2:23-cv-02697-DAD-CSK, 2024 WL 1884052, at *6 (E.D. Cal. Apr. 30, 2024) (collecting cases).  In the event plaintiff is found to lack statutory standing, it is conceivable that defendants could face some hardship to the extent they had already exerted significant time, energy, and resources into the litigation.  In addition, the court agrees with the rationale and procedure adopted in *Adolph* and finds that a stay will advance the interest of judicial economy.  *Adolph*, 14 Cal. 5th at 1124 (finding no basis for concern that this manner of proceeding would be impractical or result in relitigating the issues).

For these reasons, the court grants defendants' request to stay the case pending resolution of plaintiff's individual arbitration.

### 3.   Whether to Pause PAGA Penalties

Defendants request a pause on any accrual of additional PAGA penalties during the stay pursuant to California Labor Code § 2699.  (Doc. No. 32 at 8–9.)  Plaintiff opposes this request. (Doc. No. 31 at 27–28.)  For the reasons explained below, the court declines to pause any accrual of PAGA penalties during the pendency of the stay.

California Labor Code § 2699 provides that "a court may award a lesser amount than the maximum civil penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory."  Cal. Lab. Code § 2699(e)(2).  "A court can only exercise its

1   discretion to award lesser penalties based on the enumerated considerations." *Lawson v.*

2   *Grubhub, Inc.*, No. 15-cv-05128-JSC, 2024 WL 396183, at *6 (N.D. Cal. Feb. 1, 2024) (emphasis

3   omitted) (quoting *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1213 (2008)).

4        The plain language of this statute makes defendants' request for a pause dubious because

5   the court is not awarding any PAGA penalties or approving any PAGA settlement at this time.

6   Defendants cite *Romo v. GMRI, Inc.*, No. EDCV-12-0715-JLQ, 2014 WL 11320647, at *7 (C.D.

7   Cal. Feb. 18, 2014) and *Cardenas v. McLane Foodservice, Inc.*, No. SACV 10-473 DOC FFMX,

8   2011 WL 379413, at *4 (C.D. Cal. Jan. 31, 2011) to support their request, however both are

9   distinguishable in that they discuss Labor Code § 2699(e)(2) in the context of constitutional law,

10  for issues unrelated to a pre-award pause of PAGA penalty accrual.  The parties do not cite, and

11  the court has not found, any federal authority that would support defendants' request on this

12  matter.[5]

13       Defendants fail to set forth arguments in support of their request other than to say a pause

14  "would effectively equate to a reduction to Defendants for the duration of the imposed stay—

15  which is within this Court's recognized statutory authority."  (Doc. No. 32 at 8.)  How this

16  rationale demonstrates that failing to pause PAGA penalty accrual would be "unjust, arbitrary and

17  oppressive, or confiscatory" under Cal. Lab. Code § 2699(e)(2) is unclear at best.

18       Therefore, the court denies defendants' request to pause any accrual of PAGA penalties

19  during the pendency of the stay.

20  ///

21  ///

22  ///

23  ///

24  ///

25

26  [5] Plaintiff cites two California state trial court decisions that declined to pause PAGA penalty accrual during a pending stay.  *See Williams v. Best Buy Co.*, No. 30-2021-01194588-CU-OE-

27  CXC, 2022 Cal. Super. LEXIS 82838, at *9–10 (Cal. Super. Ct. Dec. 9, 2022); *Sermeno v. Café Rio*, No. 30-2023-01304494-CU-OE-CXC, 2023 Cal. Super. LEXIS 47757, at *15 (Cal. Super.

28  Ct. June 30, 2023).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the reasons explained above:

1.      Defendants' motion to compel arbitration of plaintiff's individual PAGA claim (Doc. No. 28) is granted;

2.      Plaintiff's non-individual PAGA claims are stayed pending completion of arbitration;

3.      Plaintiff and defendant are required to notify the court that arbitration proceedings have concluded within fourteen (14) days of the issuance of the arbitrator's decision; and

4.      Defendant's motion to dismiss (Doc. No. 6) is denied without prejudice as having been rendered moot by this order.

IT IS SO ORDERED.

Dated:   May 4, 2024

_____

UNITED STATES DISTRICT JUDGE